**ORIGINAL**

In the United States Court of Federal Claims

No. 13-833 C

(Filed: June 17, 2014)

FILED

JUN 17 2014

U.S. COURT OF
FEDERAL CLAIMS

| | |
|---|---|
| JAMES F. OUTLAW, ) | |
| ) | Subject Matter Jurisdiction; |
| Plaintiff, ) | RCFC 12(b)(1); Breach of |
| ) | Settlement Agreement; Invalid |
| v. ) | Settlement Agreement; Merit |
| ) | Systems Protection Board Final |
| THE UNITED STATES, ) | Order |
| ) | |
| Defendant. ) | |
| ) | |

James F. Outlaw, Ewa Beach, Haw., pro se.

John S. Groat, Trial Attorney, with whom were Stuart F. Delery, Assistant Attorney General; Bryant G. Snee, Acting Director; and Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. Annette Perry, Department of the Army, Washington, D.C., of counsel.

OPINION AND ORDER OF DISMISSAL

CAMPBELL-SMITH, Chief Judge.

This is a breach of contract claim based on the alleged breach of a July 27, 2011 Negotiated Settlement Agreement (July 27, 2011 NSA) between James F. Outlaw (plaintiff or Mr. Outlaw) and the U.S. Department of the Army (defendant or the Army).

Defendant moved for dismissal for lack of subject matter jurisdiction, alleging that because the July 27, 2011 NSA does not provide for money damages as a remedy for an asserted breach, Mr. Outlaw cannot meet the jurisdictional requirement that his claim must be money mandating.

Mr. Outlaw responds that several provisions in the NSA provide for the payment of monies to him, and thus, the jurisdictional requirement is satisfied. Alternatively, Mr. Outlaw alleges that the July 27, 2011 NSA is invalid due to fraud.

The motion has been fully briefed and is ripe for decision. Oral argument was neither requested by the parties nor deemed necessary by the court. For the reasons explained below, the court **GRANTS** defendant's motion to dismiss for lack of subject matter jurisdiction.

I.  Background

Plaintiff filed his complaint in this court on October 23, 2013.[1] ECF No. 1. Plaintiff brings his claim without the assistance of counsel. Mr. Outlaw filed five exhibits with his Complaint, marked as Pl.'s Exs. 1-5. ECF Nos. 1-2 to 1-6. Mr. Outlaw also filed five exhibits with his opposition, marked as Pl.'s Exs. P-1 to P-5. ECF Nos. 10-1 to 10-5.

Mr. Outlaw and the Army entered into the July 27, 2011 NSA to settle a discrimination complaint filed by Mr. Outlaw with the United States Equal Employment Opportunity Commission (EEOC). Compl. ¶¶ 7-8; Pl.'s Ex. 1, at ¶¶ 1, 3, 5a (July 27, 2011 NSA).

The July 27, 2011 NSA provided that the Army would make a lump sum payment to Mr. Outlaw, Pl.'s Ex. 1, at ¶ 4a., reverse his February 18, 2011 removal from Federal Service, and purge certain paperwork from his official personnel file regarding his absence without leave from November 2, 2010 to February 18, 2011, id. at ¶ 4b.

In return, Mr. Outlaw agreed, inter alia, to withdraw his EEOC complaint, id. at ¶ 5a., and to voluntarily retire from Federal Service effective November 1, 2010, id. at ¶ 5j.

The July 27, 2011 NSA also set forth a process by which Mr. Outlaw could complain of any alleged breach by the Army.

> If [Mr. Outlaw] believes that the Army has failed to comply with the terms of this Settlement Agreement despite having first sought the assistance of the EEO Officer to resolve the noncompliance concerns, [Mr. Outlaw] shall

---

[1]  It is noted that Mr. Outlaw previously filed a claim in this court on September 23, 2011, for an alleged breach of an earlier NSA with the Army signed on April 5, 2007. See Pl.'s Opp'n 1; First Am. Compl. ¶ 8, Outlaw v. United States, No. 11-526 (Fed. Cl. Nov. 29, 2011), ECF No. 5. The court dismissed that complaint, as the allegations therein were settled by the same July 27, 2011 NSA that is the focus of this action. See Pl.'s Opp'n 1; Outlaw v. United States, 104 Fed. Cl. 226 (2012). Mr. Outlaw's previous claim is not relevant to the instant case.

> notify the EEO/Civil Rights Office . . . (EEOCCR), . . . in writing, of the alleged noncompliance within 30 calendar days of when [Mr. Outlaw] knew or should have known of the alleged noncompliance. . . . The parties agree that [Mr. Outlaw's] sole remedy for an alleged agency breach of this Settlement Agreement is to request that the terms of the Settlement Agreement allegedly breached be implemented. If the Director for EEOCCR has not responded to [Mr. Outlaw] in writing or if [Mr. Outlaw] is not satisfied with the attempts to resolve the matter, [Mr. Outlaw] may appeal to the Equal Employment Opportunity Commission . . . for a determination as to whether the Army has complied with the terms of this Settlement Agreement.

Id. at ¶ 8 (second emphasis added).

On January 31, 2014, defendant filed a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC). Def.'s Mot., ECF No. 9. Plaintiff filed his opposition on February 24, 2014. Pl.'s Opp'n, ECF No. 10. Defendant filed a reply on March 11, 2014. Def.'s Reply, ECF No. 11.

II.  Legal Standards

Complaints filed by pro se plaintiffs are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Nevertheless, "'the leniency afforded to a pro se litigant with respect to mere formalities does not relieve [his] burden to meet jurisdictional requirements.'" Zulueta v. United States, 553 Fed. App'x. 983, 985 (Fed. Cir. 2014) (quoting Kelley v. Sec'y, U.S. Dep't of Labor, 812 F.2d 1378, 1380 (Fed. Cir. 1987)). In evaluating subject-matter jurisdiction, "'the allegations stated in the complaint are taken as true and jurisdiction is decided on the face of the pleadings.'" Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004) (quoting Shearin v. United States, 992 F.2d 1195, 1195-96 (Fed. Cir. 1993)).

A pro se plaintiff's filings are to be liberally construed. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). Nonetheless, every plaintiff must satisfy this court's jurisdiction. See Hebert v. United States, 114 Fed. Cl. 590, 593 (2014) ("Though pro se litigants are held to 'less stringent standards than formal pleadings drafted by lawyers,' failures to comply with the Court's jurisdictional requirements are not excused." (quoting Hampel v. United States, 97 Fed. Cl. 235, 237 (2011))); see also Kelley v. Sec'y, U.S. Dep't of Labor, 812 F.2d 1378, 1380 (Fed. Cir. 1987) (finding that the court may not set separate jurisdictional rules for pro se plaintiffs). The party invoking a court's jurisdiction bears the burden of establishing it, and must ultimately do so by a preponderance of the evidence. See McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189

(1936); Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).

The court may question its own subject-matter jurisdiction at any time. RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); Folden, 379 F.3d at 1354 ("Subject-matter jurisdiction may be challenged at any time . . . by the court sua sponte."). Subject-matter jurisdiction, which involves a court's power to hear a case, may "'never be forfeited or waived.'" Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)).

The Tucker Act provides for this court's jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2012).

III. Discussion

Mr. Outlaw's allegations in his complaint vary somewhat from the assertions he made in his opposition to defendant's motion to dismiss, and from the statements he made during a telephonic status conference conducted by the court regarding what claim he intended to bring in this court. Construing Mr. Outlaw's allegations in his complaint liberally, as the court is obliged to do for a pro se plaintiff, see Erickson, 551 U.S. at 94, the court understands Mr. Outlaw to be asking for: (1) review of a Merit Systems Protection Board Final Order, as well as the two preceding Initial Decisions, and a finding that they were in error; (2) review of the July 27, 2011 NSA and a finding that it is invalid and/or fraudulent; and (3) review of the July 27, 2011 NSA and a finding that the Army breached it.

Yet in his opposition, Mr. Outlaw states that he does "not allege 'breach of a settlement agreement' in this case, thus Defendant's arguments referenc[ing] settlement [agreement] breach are moot." Pl.'s Opp'n 1. Mr. Outlaw further states that he opposes defendant's motion to dismiss, "because [his claim] is based on a Settlement Agreement which is 'Invalid/fraudulent and Unenforceable.'" Id. He "now ask[s] the Court to review" that settlement agreement. Id.

On January 16, 2014, the court held a telephonic status conference to "confirm the scope of and basis for plaintiff's claim." Order, Jan. 17, 2014, ECF No. 8. Based on the discussion, the court observed that

> Mr. Outlaw agree[s] that his complaint is effectively a challenge to the July 27, 2011 Negotiated Settlement Agreement (NSA) he executed with

defendant. See Pl.'s Ex. 1. But he asserts that the settlement agreement is invalid, and further, that this court has jurisdiction to consider his claim because the NSA contains several provisions directing the payment of money.

Id. at 1-2.

Mr. Outlaw has not moved to amend his complaint to withdraw any of the allegations he made therein regarding a breach of the NSA. Accordingly, the court considers whether it has jurisdiction over the claims asserted in Mr. Outlaw's complaint; the court does not limit its consideration of the complaint based on any later asserted disavowal of the breach claim in plaintiff's opposition.

The court reviews each possible claim in turn.

    A.    Review of the MSPB Administrative Decisions

Mr. Outlaw made the following allegations and requests for relief in his complaint.

Plaintiff now comes to the U.S. Court of Federal Claims requesting review of the MSPB AJ ruling that the July 27, 2011 NSA between the parties resolved Plaintiff's appeal.[2]

Compl. ¶ 15.

In DE-0752-11-0514-I-1 (Exhibit [5][3]), the AJ erred in his decision that Plaintiff was not an employee at the time of filing case.

Id. at ¶ 20.

Incidental and collateral to monetary relief, Plaintiff hereby seeks a declaration by the Court that . . . the AJ erred in his ruling that Plaintiff was not an employee at the time of filing case.

Id. at ¶ 22.

---

[2]    "Appeal" is the term applied by the Merit Systems Protection Board to the initial request by a complainant to appeal a decision or action taken by an agency. See Pl.'s Ex. 2, at 1.

[3]    The reference in the Complaint is to exhibit 3, which is an error.

5

Defendant has not addressed expressly whether this court has jurisdiction to review a decision of the Merit Systems Protection Board. The court considers sua sponte whether it has jurisdiction over such a claim.

Mr. Outlaw received two separate Initial Decisions from the Merit Systems Protection Board, each issued by an Administrative Judge (AJ). The first decision was issued on March 7, 2012, in which the AJ found that Mr. Outlaw "was not an employee after November 1, 2010, and accordingly he ha[d] not established jurisdiction over his claim that the agency suspended him from duty after that date." Pl.'s Ex. 5, at 5. This is the decision to which Mr. Outlaw refers in paragraphs 20 and 22 of his Complaint.

On April 6, 2012,[4] a MSPB AJ issued a decision in response to a separate appeal by Mr. Outlaw that the July 27, 2011 NSA was unlawful, involuntary, or the result of fraud or mutual mistake. See Pl.'s Ex. 4, at 2. According to the MSPB, Mr. Outlaw's "appeal of his February 2011 removal [from Federal Service] . . . was dismissed as specifically provided for by the terms of the parties' July 27, 2011 settlement agreement." Id. This is the MSPB AJ ruling to which Mr. Outlaw appears to refer in paragraph 15 of his Complaint.

Mr. Outlaw was unsuccessful in his pursuit of both appeals, and he petitioned for review of both Initial Decisions. On October 19, 2012, the MSPB issued one Final Order denying both petitions. Pl.'s Ex. 4. On December 21, 2012, Mr. Outlaw filed a petition for review of the MSPB Final Order with the United States Court of Appeals for the Federal Circuit. Pl.'s Ex. P-2. The Federal Circuit dismissed Mr. Outlaw's petition as untimely.[5] Order 2, Outlaw v. Dep't of the Army, No. 2013-3061 (Fed. Cir. June 19, 2013), ECF No. 8.

---

[4] The April 6, 2012 Initial Decision is not in the record. Information about this decision was taken from the October 19, 2012 MSPB Final Order denying Mr. Outlaw's petition for review of the April 6, 2012 Initial Decision. See Pl.'s Ex. 4, at 2-4; see also Pl.'s Ex. 3, at 1 (EEOC Denial of Consideration stating that the October 19, 2012 MPSB Final Order upheld the April 6, 2012 MSPB Administrative Judge ruling that the July 27, 2011 settlement agreement between the parties resolved Mr. Outlaw's appeal.).

[5] Although Mr. Outlaw reported in his opposition that he filed a petition for review with the Federal Circuit, Pl.'s Opp'n 2, he did not report that his petition was dismissed as untimely, or file a copy of the dismissal order with his opposition. Rather, Mr. Outlaw stated: "[T]he court stipulated that it does not have jurisdiction to review cases involving bona fide claims of discrimination that were raised before and considered by the MPSB. If one is unwilling to abandon the discrimination claims forever, one must proceed in a district court or the Equal Employment Opportunity Commission." Id. In fact, the Federal Circuit said only that because "Mr. Outlaw's petition was not received within 60 days of the date he received the Board's decision, we must dismiss his petition as

Jurisdiction for judicial review of a MSPB Final Order rests with the Federal Circuit. 5 U.S.C. § 7703(b)(1)(A) ("[A] petition to review a final order or final decision of the Board shall be filed in the United States Court of Appeals for the Federal Circuit."). The October 19, 2012 Final Order stated as much, informing Mr. Outlaw, as the appellant, that he had the right to request review of the final decision from the Court of Appeals for the Federal Circuit. Pl.'s Ex. 4, at 6. The case law of this court similarly states that it has no jurisdiction to review a MSPB Final Order. E.g., De Maio v. United States, 93 Fed. Cl. 205, 209-11 (2010) (stating, in detail, that judicial review of MSPB claims rests with the Federal Circuit, not the Court of Federal Claims); see also Grant v. United States, No. 13-473C, 2014 WL 128634, at *3 (Fed. Cl. Jan. 7, 2014) (same).

The court has no jurisdiction to review the October 19, 2012 MSPB Final Order, Pl.'s Ex. 4, the March 7, 2012 Initial Decision, Pl.'s Ex. 5, or the April 6, 2012 Initial Decision. To the extent that Mr. Outlaw requests that this court review a decision or order issued by either the Merit Systems Protection Board or a MSPB Administrative Judge, the claim is dismissed for lack of subject matter jurisdiction.

    B.    Review of the July 27, 2011 NSA to Determine Whether It Is Invalid and/or Fraudulent

Mr. Outlaw made the following allegations and requests for relief in his complaint.

> The July 27, 2011 NSA is invalid/fraudulent and not signed by an "Official with Approval Authority" as required by statute. A fraudulent NSA cannot resolve Plaintiff's appeal.

Compl. ¶ 16.

> The retirement application, which resulted from said NSA, also is invalid/fraudulent (not signed by Plaintiff, but, by a non-civilian personnel officer (CPO) on an Application for Immediate Retirement (AIR), but applied retroactively, illegally).

Id. at ¶ 17.

> The NSA contains mutual mistakes (settlement agreement cannot over-ride/void a Judge's ruling).

Id. at ¶ 18.

---

untimely." Order 2, Outlaw v. Dep't of the Army, No. 2013-3061 (Fed. Cir. June 19, 2013), ECF No. 8.

7

> The NSA was coerced, is unfair and Plaintiff suffered numerous compensatory damages (return of social security benefits already paid, payment of Federal Income Taxes on income not received, illegal taking performance award and salary already paid (without due process), as well as Life Insurance coverage [(]not requested).

Id. at ¶ 19.

> An actual dispute has arisen between Plaintiff and the Agency with respect to the validity, interpretation and terms of the NSA . . . .

Id. at ¶ 21.

> Incidental and collateral to monetary relief, Plaintiff hereby seeks a declaration by the Court that the NSA is invalid/fraudulent . . . .

Id. at ¶ 22.

Defendant has not addressed expressly whether this court has jurisdiction to review the NSA to determine whether it is either invalid or fraudulent. The court considers sua sponte whether it has jurisdiction over such a claim.

The claims of fraud, invalidity, and coercion that Mr. Outlaw now makes in this court are the same allegations that Mr. Outlaw made in one of his two appeals before the MSPB, which was the subject of the April 6, 2012 Initial Decision issued by an Administrative Judge. See Pl.'s Ex. 4, at 2-4. The administrative judge denied Mr. Outlaw's appeal, and on October 19, 2012, the MSPB issued a Final Order denying Mr. Outlaw's petition for review of that Initial Decision. Pl.'s Ex. 4. According to the MSPB, the

> administrative judge fully informed [Mr. Outlaw] of the nonfrivolous allegations he would have to assert to show that he had not voluntarily entered into the parties' settlement agreement or that the agreement was unlawful, involuntary, or the result of fraud or mutual mistake. [Mr. Outlaw's] jurisdictional responses failed to raise allegations of fact that, if proven, would show that he had not voluntarily entered into the parties' settlement agreement or that the agreement was unlawful, involuntary, or the result of fraud or mutual mistake.
>
> . . . .

> [Mr. Outlaw] simply asserts that the settlement agreement is invalid because it is unlawful, involuntary, and resulted from mutual mistake and bad faith on the part of the agency. [Mr. Outlaw's] pro forma assertions are insufficient to show error in the administrative judge's explained findings that the settlement agreement was not unlawful, was not unfair, or the result of agency bad faith or duress, and that the appellant knowingly and voluntarily entered into the agreement.

Id. at 2-3 (internal citations omitted).

In effect, Mr. Outlaw again asks this court to review either the April 6, 2012 Initial Decision issued by an Administrative Judge, or the October 19, 2012 Final Order issued by the MPSB. As discussed supra Part III.A., this court has no jurisdiction to review either the Initial Decision or the Final Order.

This court also lacks jurisdiction over a claim that the July 27, 2011 NSA is invalid, because no money damages are available as relief to plaintiff for such a claim. This court has previously addressed this issue.

> Plaintiff's allegations instead amount to a claim that the 2002 settlement agreement is void or invalid. As such, the relief sought by plaintiff would be [a] rescission of the settlement agreement and not money damages. "Rescission has the effect of voiding a contract from its inception, i.e., as if it never existed. It is an equitable doctrine which is grounded on mutual mistake, fraud, or illegality in the formation of the contract." Dow Chem. Co. v. United States, 226 F.3d 1334, 1345 (Fed. Cir.2000) (citations omitted). However, this court cannot award an equitable remedy in the absence of a viable claim for money damages. See, e.g., Pauley Petroleum Inc. v. United States, 219 Ct. Cl. 24, 591 F.2d 1308, 1315-16 (1979) (noting that while the Court of Claims had "no jurisdiction to grant specific equitable relief," it could employ equitable doctrines in arriving at a monetary judgment). Thus, in the absence of a claim for money damages for breach of contract, this court cannot fashion a remedy for plaintiff.

Taylor v. United States, 73 Fed. Cl. 532, 546 (2006).

As discussed infra Part III.C., a breach of the July 27, 2011 NSA can yield no money damages for plaintiff. While plaintiff makes a general claim to "monetary damages in excess of $10,000 as a remedy for the invalid/fraudulent contract and suspension," Compl. ¶ 1, a mere claim for damages does not guarantee that such a remedy is actually available.

9

As to Mr. Outlaw's other claims, fraud and coercion are tort claims—over which this court has no Tucker Act jurisdiction. The Federal Circuit affirmed this court's dismissal for lack of jurisdiction over similar tort claims, finding that "the government's duty not to knowingly make misrepresentations to induce [the complainant] to sign the plea agreement did not arise from the government's obligations under the agreement but from tort law. Thus, the Claims Court correctly held that it lacked jurisdiction over [the complainant's] tort claims." Phu Mang Phang v. United States, 388 F. App'x 961, 963 (Fed. Cir. 2010). Further,

> [t]o the extent that plaintiff is contending that the government committed fraud against her by inducing her to enter the settlement agreement, that claim is outside our subject matter jurisdiction. 28 U.S.C. § 1491(a) (2012) ("The United States Court of Federal Claims shall have jurisdiction upon any claim against the United States . . . not sounding in tort."); Phu Mang Phang v. United States, 388 F. App'x 961, 963 (Fed. Cir. 2010).

Hawn v. United States, No. 13-651C, 2014 WL 1814380, at *4 n.3 (Fed. Cl. May 7, 2014).

To the extent that Mr. Outlaw requests that this court review the July 27, 2011 NSA to determine whether it is invalid or fraudulent, the claim is dismissed for lack of subject matter jurisdiction.

C. Breach of the July 27, 2011 NSA

Mr. Outlaw made the following allegations and requests for relief in his complaint.

> On August 30, 2011, Plaintiff filed an Appeal[6] with the Merit Systems Protection Board (MSPB) because the agency . . . had failed to restore/reemploy/reinstate him as specified in the NSA.

Compl. ¶ 9. (Plaintiff appears to complain that defendant failed to comply with certain provisions in the July 27, 2011 NSA in which the Army was required to "cancel [Mr. Outlaw's] removal from Federal Service which was effective February 18, 2011." Pl.'s Ex. 1, at 2.)

> An actual dispute has arisen between Plaintiff and the Agency . . . with respect to a breach of the NSA by the Agency.

---

[6] Plaintiff's August 30, 2011 appeal is Pl.'s Ex. 2, which was decided by the March 7, 2012 Initial Decision, Pl.'s Ex. 5.

10

Compl. at ¶ 21.

> Incidental and collateral to monetary relief, Plaintiff also seeks injunctive relief so as to require the Agency to restore Plaintiff's employment position at Schofield Barracks in Hawaii, or in lieu thereof to compensate Plaintiff for his loss of salary & benefits of the position from which he was illegally retired and suspended.

Id. at ¶ 23.

> Plaintiff requests an entry of judgment against Defendant . . . [f]or reinstatement . . . to his position in Hawaii, and return of all salary and benefits due him since November 1, 2010 to the present.

Id. at 4.

In response, defendant moves to dismiss plaintiff's claim for breach of contract on the ground that the July 27, 2011 NSA "cannot be construed as providing Mr. Outlaw any entitlement to monetary damages as required to confer jurisdiction under the Tucker Act." Def.'s Mot. 1-2. Given the limited waiver of sovereign immunity for this court to have jurisdiction, argues defendant, the NSA must "fairly be interpreted as mandating compensation by the Federal Government." Id. at 6 (quoting Holmes v. United States, 657 F.3d 1303, 1315 (Fed. Cir. 2011)).

Defendant correctly points out first, that under Federal Circuit precedent, the presumption of money damages for a breach of contract claim is not always sufficient, and second, that this court must "require a demonstration that the agreements could fairly be interpreted as contemplating money damages in the event of breach," as purely nonmonetary relief will not suffice to provide this court with jurisdiction. Id. at 7 (quoting Holmes, 657 F.3d at 1315).

The July 27, 2011 NSA provides that "[t]he parties agree that the Complainant's sole remedy for an alleged agency breach of this Settlement Agreement is to request that the terms of the Settlement Agreement allegedly breached be implemented." Pl.'s Ex. 1, at ¶ 8. Defendant points to this language and says that the "express terms of the NSA preclude fairly interpreting it as contemplating money damages," and thus under Holmes, the July 27, 2011 NSA fails to provide this court with jurisdiction. Def.'s Mot. 7.

Plaintiff took the position during the January 16, 2014 telephonic status conference call that the NSA provided the requisite money mandating authority, because the NSA contains several provisions directing the Army to pay him money. See Jan. 17, 2014 Order 2.

11

According to the Federal Circuit, "settlement agreements resolving Title VII disputes are not per se beyond the Tucker Act jurisdiction of the Court of Federal Claims." Holmes, 657 F.3d at 1312. The Federal Circuit also said that the "government's consent to suit under the Tucker Act does not extend to every contract," Id. at 1314 (quoting Rick's Mushroom Service, Inc. v. United States, 521 F.3d 1338,1343 (Fed. Cir. 2008)), and that a "contract expressly disavowing money damages would not give rise to Tucker Act jurisdiction." Id.

In Holmes, the court found there was jurisdiction, as

> the purpose of documenting and expunging Mr. Holmes's record clearly was to prevent Mr. Holmes from being denied future employment based on his record as the Navy maintained it prior to the agreements. In short, the agreements inherently relate to monetary compensation through relationship to Mr. Holmes's future employment. Further, there is no language in the agreements indicating that the parties did not intend for money damages to be available in the event of breach.

Holmes, 657 F.3d at 1316 (emphasis added).

Like Holmes, Mr. Outlaw brought a discrimination complaint and the settlement agreement in which he entered included provisions that inherently related to money. See Compl. ¶ 7 ("Plaintiff filed several Equal Employment Opportunity ("EEO") complaints against the Army for, among other bas[e]s, discrimination . . . ."); Ex. 1, at ¶ 1-3 (referring to Mr. Outlaw's discrimination complaint and Title VII of the Civil Rights Act of 1964); Ex. 1, at ¶ 4 (providing that the Army will give Mr. Outlaw a lump sum cash payment and cancel his removal from Federal Service).

Unlike Holmes, however, the July 27, 2011 NSA includes language indicating that the parties did not intend for money damages to be available in the event of breach. "The parties agree that [Mr. Outlaw's] sole remedy for an alleged agency breach of this Settlement Agreement is to request that the terms of the Settlement Agreement allegedly breached be implemented." Pl.'s Ex. 1, at ¶ 8. The terms of the NSA detail the actions the parties respectively are to undertake; there is no allowance for the payment of money. Moreover, Mr. Outlaw was represented by counsel during the settlement proceedings, whose signature appears along with Mr. Outlaw's on the July 27, 2011 NSA. See id. at 8.

Defendant is correct, the express language in the July 27, 2011 NSA indicates that there was no intention to provide relief through money damages. Thus, the NSA fails to provide money mandating authority for plaintiff's claim.

To the extent that Mr. Outlaw alleges a breach of contract claim for the July 27, 2011 NSA, the claim is dismissed for lack of subject matter jurisdiction.

IV.     Conclusion

For the reasons set forth above, defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) is **GRANTED**.  The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

_____
PATRICIA E. CAMPBELL-SMITH
Chief Judge